(No. 20122.—

THE PRESSED STEEL CAR COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(BLANCHE M. HARPER, Defendant in Error.)

*Opinion filed June 20, 1930.*

CASSELS, POTTER & BENTLEY, (RALPH F. POTTER, CLAUD D. RABER, and E. DOUGLAS SCHWANTES, of counsel,) for plaintiff in error.

STUART B. KROHN, and O. P. LIGHTFOOT, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

An arbitrator, acting under the Workmen's Compensation act, made an award to Blanche M. Harper, widow of Frederick A. Harper, an employee of the Pressed Steel Car Company, and on review it was affirmed by the Industrial Commission. The decision of the commission was confirmed by the circuit court of Cook county, and the Pressed

Steel Car Company applied to this court for writ of error to review the judgment of the circuit court, which was granted.

Frederick A. Harper was employed by the Pressed Steel Car Company as an auditor and met his death during the afternoon of December 9, 1927. He left a widow and two children dependent upon him. It was stipulated that he and the Pressed Steel Car Company were under and subject to the Workmen's Compensation act, that he was married and left a widow and two minor children, that his wage was about $30 per week, and the only question in dispute is whether he received an accidental injury which arose out of and in the course of his employment.

The plant of plaintiff in error is located at Hegewisch, in the southern part of Chicago. Harper was employed as an auditor by plaintiff in error and was required to frequently visit the "loop" district in the city of Chicago, as well as other cities, on business for his employer. He owned and kept in his garage an automobile which he used in going to and from the plant and on errands for the employer. On the day of his death he was told by the general manager of plaintiff in error to drive another employee to the Sixty-seventh street station of the Illinois Central Railroad Company for the purpose of procuring lumber for the employer, and then Harper was to proceed to the office of attorney O'Toole, in the "loop," to confer with him in reference to adjusting certain tax matters of the employer. Harper took the other employee to the Sixty-seventh street station and left him there about 1:20 P. M., then drove from the station to his home to put his car in the garage and take the train at the South Shore station of the Illinois Central Railroad Company at Seventy-first street, which was two blocks from his garage, in order to keep his appointment with attorney O'Toole at 2:30. Some effort was made by plaintiff in error to show Harper had a private engagement in the loop district that afternoon, but we think

this is not established by the evidence. It was necessary for Harper to leave his car standing out doors or drive it to his garage and put it in shelter. The temperature on that day was about zero, and Harper had been told by an automobile mechanic at his employer's Hegewisch plant that his battery was low, and that if he left his car standing out in the weather he probably would not be able to start it when he wanted to move it. He therefore drove it to his garage, put it in shelter, covered the hood with a blanket and while doing this left the engine running. He was found dead in his closed garage after 3:30 o'clock in the afternoon of the 9th. He was lying on the right side of the car, with his head toward the rear of the car. A bunch of keys was in his hand and the motor of the car was running. A post mortem disclosed that his death was due to carbon monoxide gas.

Plaintiff in error contends that the death did not occur from any service rendered plaintiff in error growing out of the employment of the deceased. It was deceased's purpose and intention after leaving the Sixty-seventh street station, where he took another employee of plaintiff in error, to put his car in shelter in his own garage, which was at Seventy-third street and Yates avenue, and then take an Illinois Central train at the South Shore station for the purpose of keeping his appointment with attorney O'Toole in the loop district to transact some business for his employer. The South Shore station was two or three blocks from Harper's garage. The evidence shows deceased maintained his own car, which he used about sixty per cent of the time in going to and from his employment and in transacting business of the employer. The employer maintained other cars, and it was the custom of the employees to use those cars or to use Harper's car when the others were in use. Harper received no compensation for the use of his car. He put the car in the garage and left the engine running while he covered the hood with a blanket. It is evi-

dent from his having keys in his hand when he was found, that he was intending to shut off the ignition and lock it when he was overtaken by death, and the motor was left running. In making trips to the loop district it had been the custom of deceased for over five years, with the knowledge and consent of the employer, to frequently drive from the plant to his home, put his auto in the garage and take the Illinois Central train at the South Shore station for down-town.

Plaintiff in error argues that the death of Harper can not be fairly traced to the employment as the approximate cause and is therefore not compensable; that he was engaged in business of his own in no way incident to his employment and not covered by the Workmen's Compensation act; that he incurred a danger of his own choosing, altogether outside of any reasonable requirement of his employment, and there can be no recovery. Defendant in error contends there was ample evidence to sustain the award and under such circumstances it should be affirmed. *Armour & Co.* v. *Industrial Board,* 273 Ill. 590, *Munn* v. *Industrial Board,* 274 id. 70, and numerous other cases, are cited in support of the contention. Defendant in error argues that where an employee is injured while performing an act in a manner different from that in which he was originally hired to perform it but in consonance with a long established custom or practice, with the knowledge and acquiescence of the employer, the employee is held to be acting within the scope of his authority. (*Alexander* v. *Industrial Board,* 281 Ill. 201; *Sunnyside Coal Co.* v. *Industrial Com.* 291 id. 523.) The fact that a servant in and about the service of the master uses his own conveyance and is left to his own devices does not sever the relation of master and servant or take him out of the scope of his employment. (*Bristol & Gale Co.* v. *Industrial Com.* 292 Ill. 16.) An employee may do things which are necessary to his own health and comfort even though they are personal

to himself, and such acts will be considered incidental to his employment. (*Steel Sales Corp.* v. *Industrial Com.* 293 Ill. 435.) It has been said in the cases first cited that if the evidence fairly tends to show the deceased received injuries causing death, arising out of and in the course of his employment, the judgment must be affirmed, and that a court in such cases is bound by the decision of the Industrial Board if there is any legal evidence to support it. The evidence shows that it was the custom of deceased in making trips to the loop district in Chicago to drive from the plant to his garage and then take the train at the South Shore station of the Illinois Central for the loop district. On these trips he was often accompanied by his superior officer. That custom had been going on for five ·years prior to Harper's death, with the knowledge of the employer. In *Porter Co.* v. *Industrial Com.* 301 Ill. 76, an employee having been out of the city of Ottawa on business for his employer, returned to Ottawa and got off an interurban car near his house to get his lunch and then started to walk to his employer's factory in another part of the city to turn in his expense account, to settle up for the week, to collect his salary and to get instructions for the following week. He decided to ride on a street car instead of walking to the factory and signaled a car to stop for him at a place where the car did not usually stop, and while crossing from the sidewalk to board the car he was struck by an automobile and seriously injured. It was contended by the employer that the accident did not arise out of and in the course of the employment. The court said that the facts must show the accident in which the injury is received had its origin in some risk of the employment. "The testimony of the defendant in error tends to show that his services for the day had not closed; that by reason of his coming into the city from the south it was convenient for him to stop at his home for his mid-day lunch on his way to the factory rather than to secure it at some public eating house. * * * Here a fair construction of the employee's testimony is that his

services for the week had not ended; that he was on his way to the factory to report his sales, receive instructions as to his duties for the next week and collect his salary." The court held the evidence established the employee was in the line of his employment. In *Sunnyside Coal Co.* v. *Industrial Com. supra,* it was said that if the employer does know about the practice or custom of an employee in connection with his employment and acquiesces therein the employee is held to be acting within the scope of his authority. Acts of the employee will be considered incidental to the employment where those things are necessary to his own health and comfort even though personal to himself. *Steel Sales Corp.* v. *Industrial Com. supra; Rainford* v. *Chicago City Railway Co.* 289 Ill. 427; *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148.

The evidence shows Harper's car was used by him in tending to duties for his employer about sixty per cent of the time. He intended, with the knowledge and approval of his superior, to go to Chicago on the afternoon of December 9 to transact business for his employer. He was directed to take another employee to the Sixty-seventh street station for the employer, and having learned that his battery was low and that the car should not be left standing out of doors in the cold zero weather, he drove it to his garage to put it in shelter, intending to walk to the South Shore railroad station to board a train for the loop district. It was for his and also his employer's benefit that the car should be put in shelter and not left standing out in the open in cold weather. He drove it to his garage for that purpose. The employer had knowledge for five years that Harper would frequently take his car to his garage before taking the train for the down-town part of the city. We think the evidence tended to show that Harper was engaged in his employer's business at the time of his death. That being true, this court cannot set aside the award.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*