(No. 24089.—

THE GREAT AMERICAN INDEMNITY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(J. L. BURDEN, Defendant in Error.)

*Opinion filed October 15, 1937.*

FARTHING, C. J., specially concurring.

PEREGRINE & BRUEGGER, for plaintiff in error.

PHILIP C. KLOHR, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

James L. Burden, the claimant, an attorney, claim adjuster and investigator employed by the Great American Indemnity Company, made application to the Industrial Commission for compensation for an injury to and loss of his left eye, alleged to have arisen out of and in the course of his employment. An award by the arbitrator was confirmed by the Industrial Commission, and the superior court of Cook county confirmed the decision of the Industrial Commission. This court allowed a petition for a writ of error and the proceeding is here for further review.

The evidence presented in support of the claim tended to show that on October 2, 1933, the claimant had visited

the municipal court of Chicago on business for his employer, the Great American Indemnity Company. He was returning to his office and, at or about 10:30 o'clock in the morning, while walking at Madison and La Salle streets, he got a foreign substance in his eye. Irritation followed and he visited a doctor who removed a particle from the eye. Treatment was thereafter administered but the eye became worse and the claimant was ordered to a hospital. The eye continued to grow worse and on November 2, 1933, was removed.

On behalf of the employer there was testimony that, when the claimant entered the hospital on October 4, he stated that on the previous Saturday night (September 30) he got something in his eye while at the Century of Progress; that the next day the eye was inflamed and on Monday, the second day, it began to pain him; that he saw a physician who directed him to use hot applications on his eye. In pursuance of the statements of the claimant made to an interne, a hospital record was made which recited the foregoing and other facts with reference to the claimant's eye. The claimant denied that he made a statement at the hospital or elsewhere that he got something in his eye at the Century of Progress, but only that he had noticed a twitching of the eye at that time. The hospital record which recited the foregoing facts with reference to the case disappeared from the desk used by nurses in the corridor of the seventeenth floor where the claimant had his room. The interne who originally prepared the history sheet of the condition of the claimant's eye, reproduced from memory the substantial parts of the original history, and a new record was substituted for the missing one.

The medical testimony offered concerning the condition of the claimant's eye was largely that of specialists. One of these, Dr. L. R. Millen, testified that he fitted the claimant with glasses between 1930 and 1932, and at that time the claimant said that his eye would "tear," twitch and

burn occasionally. The doctor was asked a hypothetical question embodying facts substantially the same as those presented on behalf of the claimant, and the inquiry was whether or not, in his opinion, there was a causal connection between the entry of a foreign substance in the eye of the person, supposed in the question, and the subsequent condition which led to the enucleation of the eye, or whatever operative procedure was had. An objection was interposed to the question. The witness was permitted to answer and stated that, in his opinion, there was such a causal connection. On cross-examination, however, the witness admitted that, independently of a foreign substance lodging in the eye, other causes, including infection, could cause the same condition.

On behalf of the employer, Dr. Sydney Walker, an eye specialist, testified that the condition of the claimant's eye was caused by pneumococcic ulcer; that the claimant came to the office of the witness on October 3, 1933, and stated that a foreign body entered his eye while he was at work. The doctor treated the eye and instructed the claimant to report at his office the following day, which the claimant did. On October 4, when the claimant went to the doctor's office, the ulcer had spread rapidly and the claimant had an active hypopyon. The case was so severe that the doctor sent the claimant to St. Luke's hospital for intensive treatment. The ulcer continued to spread and a pan-ophthalmitis developed, and about a week later the doctor enucleated the eye. The doctor testified that the type of ulcer which the claimant had would not develop in twenty-four hours. The doctor expressed the opinion, taking into consideration the appearance of the claimant's eye the first time the witness saw it, combined with the scientific knowledge the witness possessed as an eye specialist, (having had experience with over three thousand cases of like ulcer) that any foreign body which might have lodged in the claimant's eye as recently as the day before the witness saw the claim-

ant, could not have had any causal connection with the condition which necessitated the removal of the eye; that such a foreign body entering the eye the day previously could not have caused a deep ulcer in twenty-four hours such as the witness found on October 3; that the incubative period of a pneumococcic ulcer is from three to five days. The doctor testified that, in all his experience, the hypopyon had never developed in twenty-four or thirty hours, and it was his opinion it could not develop in that length of time.

Dr. Earl Vernon, an eye specialist, testified that he had treated two hundred or three hundred cases of pneumococcic ulcer; that such ulcers have definitely recognized characteristics; that their incubation period is two or three days; that he had never known of a case where the period was as short as twenty-four hours, and in the doctor's opinion the incubation period could not be limited to so short a time; that two or three days' time was the incubation period of a pneumococcic ulcer. The witness was asked a hypothetical question, embodying the fact of the entry of a foreign body in the eye at a certain time, the removal of the foreign substance, followed by conditions and symptoms of pneumococcic ulcer, whether the foreign body in the eye would cause the ulcer, and the doctor's opinion was that it did not do so.

Dr. Stanley J. Giryotas testified that he saw the claimant on October 2, 1933, and at that time removed a foreign body from the cornea of the claimant's eye, treated the eye, saw the claimant again in the afternoon and found a slight sign of irritation. The history given the witness made little impression upon him. Dr. George N. Beecher, an associate in the office of the previous witness, testified that he casually examined the claimant's eye at the time in question and found a trivial abrasion on the cornea but nothing to account for the subjective complaints of the claimant.

While there is some evidence that the condition of the claimant's eye might have been caused by a foreign sub-

stance lodging there at the time alleged in the application for compensation, the weight of the evidence, especially of a medical nature, is that the condition found would not have followed so soon upon an accident such as was testified occurred on October 2, 1933. There is substantial evidence that the claimant, himself, gave a history of something entering his eye at the Century of Progress on the Saturday previous to October 2, and that a hospital record was made, based upon those facts. That record disappeared. It is not contended, however, that the employer would have been liable for such injury, if one occurred at the Century of Progress.

Assuming that the accident occurred as alleged in the claimant's application, the question is presented whether the injury is compensable. A prerequisite to the right to compensation for an accidental injury is that it must arise out of as well as occur in the course of the employment. The mere fact that the employment duties take the employee to the place of the injury, and that but for the employment he would not have been there, is not, of itself, sufficient to give rise to the right to compensation, but there must be some causal relation between the employment and the injury. The causative danger must be peculiar to the work and not common to the neighborhood. (*Gooch* v. *Industrial Com.* 322 Ill. 586; *Mix Dairy Co.* v. *Industrial Com.* 308 id. 549; *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148.) The duties of an employee involving the necessity of using the streets, expose him to the risks of the street, but if the risk is of a general nature, not peculiar to the street, an injury occurring there does not necessarily arise out of the employment. In the *Mueller Construction Co. case,* after a consideration of many decisions in industrial injury cases occurring in the use of the streets, we said, "The gist of the decisions seems to be that there must be some special risk incident to the particular employment which imposes a greater danger upon the em-

ployee than upon other persons using the streets. The criterion, however, is not that other persons are exposed to the same danger, but rather that the employment renders the workman peculiarly subject to the danger. The question is, then, did the circumstances of the employment of the defendant in error require him to incur some special risk in using the street in the way he did?" The employee, in that case, was required to ascertain the amount of material on hand, the amount needed for the construction work on which the employer was engaged and to take steps to obtain needed material. Upon contracts for some buildings the construction company had installed telephones on the premises, but for the work involved in that case it had not done so, in the absence of which the employee pursued the practice of using public telephones. While in the act of crossing a street to make a telephone call the employee was struck by an automobile.

Three cases in which injuries on streets occurred are cited in the *Mueller Construction Co. case,* but they are distinguished from that case. A janitor was overcome by heat on the street while taking messages from one headmaster to another. In the second case a painter, in crossing a street to obtain paint, was knocked down and injured by a tramcar. In the third case a charwoman was sent by her employer to mail a letter. While on the street going to the post-office she fell and broke her leg. No recovery was allowed in any of the cases. The basis of the decision in each case was that the injury sustained did not arise out of any special risk peculiar to the line of employment greater than that imposed upon others, but originated from a cause to which all persons who use the public streets, whether employed or not, are in an equal degree exposed. The test is not whether other persons were exposed to the same danger when crossing a street, but whether the particular employment rendered the workman peculiarly subject to such danger, and in the *Mueller Construction Co. case* we

held that the employee, in being upon the street on the errand mentioned, was subject to a risk peculiar to the particular employment. The entry of a foreign substance in the eye of a pedestrian on the street ordinarily would be similar to the same risk on private property and would have no relation to the employment. There was no evidence in this case showing any causal connection between the employment and the accident to the claimant's eye. The fact established, or sought to be established, was merely that the foreign substance entered the claimant's eye on a public street and there was nothing further shown to connect it with the employment. The action of the elements in causing death or injury does not, under ordinary circumstances, justify an award of compensation. (*Alzina Construction Co.* v. *Industrial Com.* 309 Ill. 395.) The floating of foreign bodies or particles in the air may be likened to the elements. Their action cannot be provided against, for the benefit of employees. The Workmen's Compensation act does not intend that the employer who comes within its provisions shall be an insurer of the safety of his employees. (*Weis Paper Mill Co.* v. *Industrial Com.* 293 Ill. 284.) The burden was on the claimant to establish his right to compensation under the Workmen's Compensation act, but he failed to show a causal relation between his employment and the accident to his eye.

The judgment of the superior court is reversed.

*Judgment reversed.*

Mr. CHIEF JUSTICE FARTHING, specially concurring: I agree with the result reached in this opinion but am of the view that it contains some unnecessary discussion.