(No. 2915— )

ANNE C. DEUEL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 14, 1938.*
*Rehearing denied December 20, 1938.*

R. J. CANNELL, for claimant.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

On May 11, 1934 Anne C. Deuel was appointed Field Agent for Division 2, comprising ten northern Illinois Counties in the Division of Rehabilitation, Board of Vocational Education, at a salary of Two Hundred ($200.00) Dollars per month. Her work consists of investigating cases of physically handicapped people and aiding in seeing that they obtain educational aid and remunerative employment. She and the other agents are required to travel about their district, using the cheapest and most expeditious methods of travel. Part of such travel is by train and part of it by personally owned automobile, for which the division allows her pay at the rate of Five (5) Cents per mile. In the conduct of her work it is sometimes necessary that the agent transport the client to or from medical offices or hospitals, arrange for surgical care, obtain necessary artificial braces and appliances when necessary, placing the patient for training in a trade or business school or factory, with visitations by the agent to the factories and other places to supervise such training work, later in placing the handicapped person in such employment as may be obtained. In interviewing prospective employers the agent finds it necessary to visit tailor shops, furniture factories, machine shops and other types of factories.

As the headquarters of the department under which claimant is employed are in the Centennial Building, owned by the State and located in Springfield, Illinois, a stipulation has been filed by claimant showing the number and type of elevators in such building and the number of stories, fire escapes, method of heating, lighting, machines and sharp-pointed instruments used in the building. It further appears that claimant's headquarters however were in Rockford, Illinois.

The record further shows that on December 20, 1935 claimant was returning to Rockford from Freeport, Illinois, where she had been calling on cases in the course of her duties. About nine miles east of Freeport she stopped her car to adjust the winter front of her automobile. In getting out of the car she pulled loose the seat cover and as she got back into the car she pinned the seat cover in place with an upholstery pin, and in so doing pierced the middle finger of the left hand at the second joint so that the pin entered the

tendon sheath. Soreness developed in the joint and infection resulted. During the night of December 23rd claimant had severe chills and fever and called Dr. Edward H. Weld on December 24th. The infection spread into the palm of the hand and on December 28th Dr. Weld opened the finger. The condition of the hand grew worse, and on January 1st patient was removed to St. Anthony's Hospital where the hand was again opened in three places and drains were inserted. Two other operations took place on January 20th and on February 13th, and on March 9th the patient was removed to the Passavant Hospital in Chicago where Dr. Koch, orthopedic surgeon, removed the tendon of the second finger from the middle of the palm to the tip of the finger. This also resulted in a stiffening of the third finger from the knuckle where it joins the palm leaving the finger stiff, so that she can flex it only about fifty (50) per cent of normal. The fourth or little finger can be flexed about seventy-five (75) per cent. The infection affected the other three fingers so that claimant cannot completely close the hand. She returned to work on the 1st day of April, A. D. 1936 and is still employed in the same work, but finds it necessary to employ a stenographer to take care of her records and correspondence. The medical and hospital service obtained by claimant resulted in numerous bills, as she had special nurses and five different doctors and surgeons, the total of such bills being One Thousand Two Hundred Fifty-five & 55/100 ($1,255.55) Dollars, of which claimant has paid Nine Hundred Sixty-four & 55/100 ($964.55) Dollars. These bills are as follows:

| | Paid | Balance due |
|---|---|---|
| Dr. E. H. Weld, Rockford, Illinois | $100.00 | $200.00 |
| Dr. E. W. Goembel, Rockford, Illinois | 10.00 | ........ |
| Dr. E. G. Anderson, Rockford, Illinois | 3.00 | 2.00 |
| Dr. R. J. Mroz, Rockford, Illinois | 25.00 | ........ |
| Dr. S. L. Koch, 54 E. Erie St., Chicago | 75.00 | ........ |
| St. Anthony's Hospital, Rockford, Illinois | 275.00 | 89.00 |
| Passavant Hospital, Chicago, Illinois | 115.55 | ........ |
| Mrs. Marian Haines, R. N., Rockford, Illinois. | 28.00 | ........ |
| Miss Ruth Anderson, R. N., Rockford, Illinois. | 28.00 | ........ |
| Miss Phyllis Rosander, R. N., Rockford, Illinois | 305.00 | ........ |
| Total | $964.55 | $291.00 |

Claimant was unable to return to her employment for a time, and was temporarily and totally disabled from December 24, 1935 to April 1, 1936.

During that time she received as salary, the sum of Six Hundred Forty-six & 15/100 ($646.15) Dollars, all of which was for non-productive time. On May 15, 1929, plaintiff and her husband who later died on April 30, 1931, adopted two children, Betsy Deuel, aged nine years on August 1, 1936 and Reuben Deuel, aged eight years on March 2, 1936, both of said adoptions being under orders of approval by Judge Jarecki in the County Court of Cook County, Illinois. Plaintiff, by her amended complaint, filed August 5, 1937, seeks an award of Two Thousand Four Hundred Thirty-three & 83/100 ($2,433.83) Dollars for temporary total disability, specific loss of the first, second, third and fourth fingers, and hospital, medical and nursing expenses, less a credit of Six Hundred Forty-Six and 15/100 ($646.15) Dollars, heretofore received by her as salary for non-productive time.

Claimant was before the court for oral examination and there is no question as to a certain specific loss of use of the fingers in question. Notice of the accident and of claim for compensation were had by respondent within statutory limitations, and it is apparent from the record that the accident in question occurred in the course of claimant's employment.

The Attorney General has raised two other material questions, i. e.:

1. Was the claimant such an employee as to be entitled to the benefits of the Workmen's Compensation Act of the State of Illinois?

2. Did the accident arise out of the employment as well as during the course thereof?

As to the first of these issues, we believe the record discloses sufficiently that claimant's duties required her to go into various factories and shops and other places in the course of her supervisory duties, where machinery and sharp-edged cutting tools are known to be operated, that we may consider her and the respondent as both being within the terms of the Illinois Workmen's Compensation Act at the time of the injury. The question of when does an accident arise out of and in the course of the employment is in some cases difficult to determine.

Angerstein in his work on compensation (1930 Ed. p. 162) says:

"The title and section 1 of the Act make it clear, and the Supreme Court has also so construed it, that an employer is required to pay compensation

for accidental injury or death only where the accident both 'arises out of' and 'in the course of' the employment. It is not sufficient that the injury occurs 'in the course of' the employment. It must also 'arise out of' the employment. As stated by the Supreme Court of another state construing a similar provision: 'In order to restrict beyond the reach of question the words 'in the course of the employment' the words 'arising out of' were added, so that the proof of the one without the other will not bring a case within the Act.'

"In other words it is well settled that to impose a compensation liability or to justify an award, the accident must have 'arisen out of' as well as 'in the course of' the employment, and the two are separate questions to be determined by different tests, for cases often arise where both requirements are not satisfied.

"The words 'in the course of' the employment relate to the time, place and circumstances under which the accident occurs, while the words 'out of' the employment relate to the origin or cause of the accident. 'In the course of' means about the same as within the scope of the employment. An employee may generally be said to be within the scope of his employment and an accident may be said to arise 'in the course of' the employment, when he is doing the work that he was employed to do, or while he is doing anything which a man so employed may reasonably do within the time during which he is employed and at a place where he may reasonably be during that time. It also may be stated that the scope of an employee's duties or employment is determined by what he was employed to do and what he actually did with the employer's knowledge and consent or was in the habit of performing as a part of his duties.

"An accident 'arises out of' the employment when it is peculiar to or incidental to the employment, or when it is something the risk of which might have been contemplated by a reasonable person when entering the employment as being incidental to it. 'Arising out of' has to do with the cause of the injury and there must be a causal connection between the work the employee is hired to do or the conditions, etc., under which he is required to work and the injury. So it may be said that if the accident is incidental to, and a part of and results from the work the employee was employed to perform, it arises out of the employment."

In the recent case of *Great American Indemnity Company* vs. *Industrial Commission,* cited in October, 1937, claimant sought compensation for injury to his eye, which he claimed to have suffered by getting a particle of foreign substance therein while returning to his office from a trip to the Municipal Court of Chicago, where he had been on business for his employer. An award by the arbitrator was confirmed by the Industrial Commission, and the latter's decision was confirmed by the Superior Court of Cook County. In reversing the judgment the Supreme Court said:

"Assuming that the accident occurred as alleged in the claimant's application, the question is presented whether the injury is compensable. A prerequisite to the right to compensation for an accidental injury is that it

must arise out of as well as occur in the course of the employment. The mere fact that the employment duties take the employee to the place of the injury, and that but for the employment he would not have been there, is not, of itself, sufficient to give rise to the right to compensation, but there must be some causal relation between the employment and the injury. The causative danger must be peculiar to the work and not common to the neighborhood. (*Gooch* vs. *Industrial Com.* 322 Ill. 586; *Mix Dairy Co.* vs. *Industrial Com.* 308 id. 549; *Mueller Construction Co.* vs. *Industrial Board*, 283 id. 148.) The duties of an employee involving the necessity of using the streets, expose him to the risks of the street, but if the risk is of a general nature, not peculiar to the street, an injury occurring there does not necessarily arise out of the employment. In the Mueller Construction Co. case, after a consideration of many decisions in industrial injury cases occurring in the use of the streets, we said, 'The gist of the decisions seems to be that there must be some special risk incident to the particular employment which imposes a greater danger upon the employee than upon other persons using the streets. The criterion, however, is not that other persons are exposed to the same danger, but rather that the employment renders the workman peculiarly subject to the danger. The question is, then, did the circumstances of the employment of the defendant in error require him to incur some special risk in using the street in the way he did.' The employee, in that case, was required to ascertain the amount of material on hand, the amount needed for the construction work on which the employer was engaged and to take steps to obtain needed material. Upon contracts for some buildings the construction company had installed telephones on the premises, but for the work involved in that case it had not done so, in the absence of which the employee pursued the practice of using public telephones. While in the act of crossing a street to make a telephone call the employee was struck by an automobile.

"Three cases in which injuries on streets occurred are cited in the Mueller Construction Co. case, but they are distinguished from that case. A janitor was overcome by heat on the street while taking messages from one headmaster to another. In the second case a painter, in crossing a street to obtain paint, was knocked down and injured by a tramcar. In the third case a charwoman was sent by her employer to mail a letter. While on the street going to the post office she fell and broke her leg. No recovery was allowed in any of the cases. The basis of the decision in each case was that the injury sustained did not arise out of any special risk peculiar to the line of employment greater than that imposed upon others, but originated from a cause to which all persons who use the public streets, whether employed or not, are in an equal degree exposed."

(367 Ill. 241 at page 246.)

In the case at bar the injury resulted from the claimant sticking her finger with a pin while engaged in pinning a seatcover which had come loose and which she was replacing. The court cannot find therein that claimant was being subjected to some special risk incident to the particular employment in which she was engaged and which imposed upon her any

greater danger than upon other persons. The accident did not occur through any causative danger which was peculiar to the work in which claimant was engaged. The Workmen's Compensation Act does not intend that the employer who comes within its provisions shall be an insurer of the safety of his employees. The burden was on the claimant to establish her right to compensation under the Workmen's Compensation Act, but she has failed to show casual relation between her employment and the accident to her finger. In line with the ruling expressed in the case of *Great American Indemnity Company* vs. *Ind. Comm. supra,* an award is herein denied and the claim dismissed.

Mr. Chief Justice Hollerich dissenting.