(No. 28300.—

THE CITY OF CHICAGO, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EDWARD HOMAN, Defendant in Error.)

*Opinion filed March 21, 1945.*

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, and L. LOUIS KARTON, of counsel,) all of Chicago, for plaintiff in error.

ORR, VAIL, LEWIS & ORR, and IRVING M. GREENFIELD, (LOREN E. LEWIS, of counsel,) all of Chicago, for defendant in error.

Mr. JUSTICE GUNN delivered the opinion of the court:

The defendant in error, Edward Homan, was employed by the city of Chicago in the capacity of a license investigator. He worked in the loop district of Chicago from Washington to Van Buren streets, and from Clark street to Michigan avenue. It was his job to canvass all places of business and individuals in that district requiring a city license, and customarily he went from place to place walking the sidewalks. February 2, 1942, he had reported at the office for work, and was proceeding to his territory in the morning, going east on Jackson boulevard, and, after crossing Dearborn street, he stubbed his toe in stepping up to the sidewalk on the opposite side of the street. He did not fall down, nor lose his balance. He was within the territory in which he was supposed to work. At that time the subway was being constructed and the street was torn up, and the step up was said to be a little higher than usual. Homan, at the time, was afflicted with a diabetic condition.

Shortly after the accident Homan noticed pain, and quit before the workday was ended. The superior of his department was notified and a doctor called, who attended for several days. He went back to work on the eighteenth of the month, and worked until the latter part of March, when his foot commenced to again swell, and he went to the hospital, where his toe was lanced and a week later amputated. He remained in the hospital from March 31 until June 20, when he went home. He re-entered the hospital during the month of August and remained until September 4. On August 15 his leg was amputated several inches above the knee. Compensation was allowed by an arbitrator and the Industrial Commission, and confirmed on *certiorari* by the circuit court of Cook county.

The only question involved is whether Homan's injury arose *out* of his employment, there being no dispute that it did arise *in* the course of his employment. The point

for determination is whether the injury resulted from what is commonly designated a street risk to which everyone is subject, or grew out of his employment because it was inseparably connected with his work.

Most of the early cases hold that for an injury to arise out of employment the causative danger must be peculiar to the work and not common to the neighborhood, and therefore it was held that injuries occurring upon the street, while transacting business of the employer, do not arise out of employment within the operation of the Workmen's Compensation Act. (*McNicol's case,* 215 Mass. 497, L.R.A. 1916-A, 306, Notes 51 A.L.R. 511.) To this construction, however, there was an exception in the case of workmen whose duties required them to be continually in the streets, the court basing the exception upon the ground that it could be foreseen that their use of the streets involved a peculiar hazard from street perils. There can be no question, however, that the recent trend of the authorities moves towards a more liberal construction of the term "arising out of the employment," and perhaps a majority of the courts of different jurisdictions have modified the ordinary rule. Thus, in *Palmer* v. *Main,* 209 Ky. 226, 272 S. W. 736, it is said that an accident arises out of the employment if it is a direct and natural result of a risk reasonably incident to the employment in which the injured person is engaged. And in *Schroeder & D. Co.* v. *Industrial Com.* 169 Wis. 567, 173 N. W. 328, in discussing the claim of a salesman who had slipped on a public street and injured his leg, the court said that the rule might be restated as follows: "Is the injury one resulting from a hazard pertaining to and inseparably connected with the industry, or substantially increased by reason of the nature of the services which applicant is required to perform? It is not the nature of the hazard that is the determinative thing, but rather whether or not it is a usual or necessary incident to the

employment." Many other jurisdictions have reached the same conclusion. Notes 51 A.L.R. 514.

It is urged by plaintiff in error that the rule in all of its strictness has been adopted in Illinois, and in support of its position it cites a number of cases, including *City of Chicago v. Industrial Com.* 376 Ill. 207; *Great American Indemnity Co. v. Industrial Com.* 367 Ill. 241; *Farley v. Industrial Com.* 378 Ill. 234, and *Mueller Construction Co. v. Industrial Board,* 283 Ill. 148. To support the award defendant in error says the liberal rule is in force in this State, and cites *Mueller Construction Co. v. Industrial Board,* 283 Ill. 148; *Illinois Publishing Co. v. Industrial Com.* 299 Ill. 189; *Permanent Construction Co. v. Industrial Com.* 380 Ill. 47, and *Puttkammer v. Industrial Com.* 371 Ill. 497. These two lines of cases seem in some respects to be in conflict, but may, upon critical analysis, be reconciled.

The first case called to our attention involving the street-risk doctrine is that of *Mueller Construction Co. v. Industrial Board,* 283 Ill. 148. In that case an award was sustained where a man had been injured crossing a street to telephone for supplies needed by his employer in the course of its business. The court cited a number of cases from other jurisdictions, some of which allowed recovery and some of which did not. The oft-repeated test is set out in that case as follows: "The criterion, however, is not that other persons are exposed to the same danger, but rather that the employment renders the workman peculiarly subject to the danger. The question is, then, did the circumstances of the employment of the defendant in error require him to incur some special risk in using the street in the way he did? If so, no matter how slight, it cannot be said that no greater danger was imposed upon him than upon an ordinary member of the public. Under the decisions, if the plaintiff in error had employed a messenger

to run errands for the foreman in charge of the work on the cathedral, to answer telephone calls and send messages by telephone, there could be no question but that he could recover if he were injured in the same manner that the defendant in error was injured." This case has been cited many times in later decisions, and so far as we can ascertain has never been specifically overruled.

It is said, however, that the effect of *Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241, and *City of Chicago* v. *Industrial Com.* 376 Ill. 207, is to overrule this case, or, at least, to modify it to the extent that a person injured in the streets when doing something incidental to the business of his employer is not entitled to compensation. In the *City of Chicago case* the employee worked for the election commission of the city. His business was to work in an office. There was a contention made he had been appointed an investigator, whose duty it was to use the streets in making such investigations. This was denied by the city, and in the opinion it is said that the records of the commission disclosed no assignment of the deceased to do outside work. The opinion states that the mere fact that the employee may have sustained a blister while canvassing is not decisive. Its conclusion is that the record failed to disclose sufficient facts or circumstances whereby a causal connection can be traced between his employment and his alleged accident. If no sufficient proof was made that he worked in the streets, the conclusion was in accord with previous cases. The *Mueller case* is cited, but there is no indication that the rule set out in that case is overruled. The judgment of this court is based upon the fact that there was not sufficient evidence to connect the injury with the employee and, consequently, no right to recovery. In the case of *Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241, the employee went to one of the courts on business of his employer, and while returning got a foreign substance in his eye, as the result

of which he finally lost the eye. The *Mueller case* is cited several times in the course of the opinion and not overruled, but simply held to be inapplicable to the facts. In holding that no compensation could be awarded, the floating of foreign bodies and particles in the air was likened unto the action of the elements, for which no compensation could be awarded, and the award was set aside because the claimant had not· sustained the burden of showing a causal relation between his employment and the accident.

The case of *Farley* v. *Industrial Com.* 378 Ill. 234, has no bearing upon the question involved. There, an employee for a considerable period of time had been in the habit of taking papers and small change to his home in the evening and carrying them back to the office in the morning. It was no part of his employment time. In going to the office he fell upon the ice and was injured. It was at once apparent there was no connection between the slipping on the ice and the carrying of the package of papers, because in either event he would have been compelled to walk upon the same street, at the same time, whether he carried anything or not.

The late case of *Cummings* v. *Industrial Com. ante,* p. 356, is another case involving injuries to an eye from particles floating in the air, and it was held the employee had failed to prove the accident had its origin in some risk connected with the employment, because particles in the air were a risk to which the general public is subject.

A review of many cases involving principles similar to the contentions made by the parties to this suit is to be found in *Borgeson* v. *Industrial Com.* 368 Ill. 188. A traveling salesman driving down the street in his automobile was injured by a bullet fired by a colored man, directed at another colored person. In holding the injury did not arise out of employment, the court called attention to the cases of *Irwin-Neisler & Co.* v. *Industrial Com.*

346 Ill. 89, *Porter Co.* v. *Industrial Com.* 301 Ill. 76, *Solar-Sturges Mfg. Co.* v. *Industrial Com.* 315 Ill. 352, *Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189, *Pressed Steel Car Co.* v. *Industrial Com,* 340 Ill. 68, and *Porter* v. *Industrial Com.* 352 Ill. 392, all of which involved the awarding of compensation for injuries sustained, by collision, while on the street or in a public place, or while boarding a streetcar, or traveling on behalf of the employer in the course of the employment. In the *Borgeson case* we found that in each of these cases there was a causal connection or relation between the injury and the nature of the employment, and that the injury arose out of the employment. The cases of *Spiller* v. *Industrial Com.* 331 Ill. 401, *Jones Foundry Co.* v. *Industrial Com.* 312 Ill. 27, *Sure Pure Ice Co.* v. *Industrial Com.* 320 Ill. 332, *Jersey Ice Cream Co.* v. *Industrial Com.* 309 Ill. 187, and *City of Chicago* v. *Industrial Com.* 292 Ill. 406, where the employee was shot either accidentally or by mistake or intentionally, either by a fellow worker or by a stranger, are also cited, and in each case no compensation was allowed. The *Borgeson case* holds that compensation was denied in the shooting cases because the injuries sustained did not have their origin in any risk peculiar to the employment, and therefore there was no causal relation between the character of the employment and the injury.

What, then, is meant by the term causal relation between the injury and the nature of the employment, which includes or excludes an employee from the benefit of the Workmen's Compensation Act? The test set out in the *Borgeson case* is: "If the injury is caused by reason of some factor unrelated to the nature of the employment it cannot be said to arise out of the employment. The injury arises out of the employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the conditions under

which the work is required to be performed and the resulting injury. This test would exclude an injury which cannot fairly be traced to the employment as a contributing, proximate cause and which comes from a hazard to which the employee would have been equally exposed apart from the employment."

In the case of *Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189, where an advertising solicitor was going to see a prospective customer, we said: "It is for the lawmaking body to determine in the first instance what employers and employees shall be brought within the limits of the act, and we are not prepared to say that there is not some basis for including within its provisions solicitors and salesmen whose work is largely outside the plant. These employees, because of the nature of their business, are compelled to expose themselves to the hazards of the street and to the hazards of automobile and railroad transportation much more than the general public. In the case at bar it was the business of the employer that brought deceased to the place where he was killed, and the work in which he was engaged was just as essential to the operation of the employer's business as the work of the linotype operator or the pressman." In the *Borgeson case* the award was set aside because the injury by a bullet fired in a quarrel between two strangers could not be traced to the employment as a contributing cause, but cases allowing awards for injuries sustained by employees in traveling over the public streets were approved because the injuries arose out of the employment and had a causal connection with such employment.

We do not deem the case of *Puttkammer* v. *Industrial Com.* 371 Ill. 497, relevant to the point under consideration, as there the sole question was whether the employee broke the thread of his employment when, while aiding an injured child in the street, he was himself killed. The

only question involved was what constituted a departure from the course of the employment.

The case of *Permanent Construction Co.* v. *Industrial Com.* 380 Ill. 47, has some bearing upon the present situation. In that case a number of employees of a construction company contracted typhoid fever from infected water, which was used not only by the inmates of an asylum and surrounding community, but by the employees as well. We there held that the rule applicable in cases where there was supposed to be a risk common to employees and public alike did not apply if the employees, by reason of their employment, were exposed to an intensified or greater risk than the public, or if their employment necessarily intensified the general hazard of contracting the disease, and that if injury resulted, it was an accident arising out of the employment, although unexpected and unusual.

We are of the opinion that the rule announced in the *Mueller Construction Co. case* has not been departed from. In several of the cases in which a different result was reached, such result was required by the facts, which failed to bring them within the rule in that case. We have seen, from what is said above, that awards have been sustained in a number of cases where the street risks were present at the time of the injury. We also find that this court has held that in many cases an injury in the public streets had a causal relation to the risks of the employment, and arose out of the employment, warranting an award. We have also held that injuries through causes which cannot be avoided or guarded against, such as actions of the elements, and things likened unto actions of the elements, like dust particles in the air, or acts of God, such as cyclone or lightning, have no causal relation to the employment, because everyone alike suffers the risk.

In the *Borgeson case,* in commenting upon the instances in which awards had been allowed for employees injured on the public streets, we said: "It is manifest from an

examination of each of the above cases that the injury not only had its origin in the nature of the employment but was the direct result of the risks to which the injured employee, by reason of the nature and incidents of his employment, was exposed to a greater degree than if he had not been so employed." We can see little distinction between riding in an automobile or a streetcar in the course of the employer's business and suffering an injury while walking upon the streets or public places of a city performing the same duties. If an essential part of one's employment requires part-time use of the street in performing his duties, the risk is lesser in degree only than that of spending all of his time.

The rationale to be deduced from all the cases is that the risks of the street may, depending upon the circumstances, become risks of the employment. Where, therefore, the proof establishes that the work of the employee requires him to be on the street to perform the duties of his employment, the risks of the street become one of the risks of the employment, and an injury suffered on the street while performing his duty has a causal relation to his employment, authorizing an award under the Workmen's Compensation Act. Applying such rule to the present case it seems that defendant in error, by traveling from place to place upon the streets to investigate those who were required to hold licenses, was exposed to risks of accidents in the street to a greater degree than if he had not been so employed. In such case, he comes clearly within the rule laid down in the *Mueller case,* the *Permanent Construction Co. case,* and the *Borgeson case,* and was entitled to an award.

The judgment of the circuit court of Cook county is accordingly affirmed.

*Judgment affirmed.*