(No. 11715.—Judgment affirmed.)

THE MUELLER CONSTRUCTION COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.*— (JOSEPH BELANGER, Defendant in Error.)

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

1. WORKMEN'S COMPENSATION—*the words "arising out of" and "in the course of" the employment are used conjunctively in Workmen's Compensation act.* In section 1 of the Workmen's Compensation act of 1913 the words "arising out of" and "in the course of" are used conjunctively and in order to satisfy the statute both conditions must concur, as the employer is not an insurer for all accidents occurring in the course of the employment.

2. SAME—*meaning of words "arising out of" and "in the course of" the employment.* In section 1 of the Workmen's Compensation act of 1913, providing that an injury for which compensation is to be paid must arise out of and in the course of the employment, the words "arising out of" refer to the origin or cause of the accident and are descriptive of its character, while the words "in the course of" refer to the time, place and circumstances under which the accident takes place.

3. SAME—*reason for classification of hazardous employments in Workmen's Compensation act.* The reason for the classification of hazardous employments in section 3 of the Workmen's Compensation act of 1913 is that those engaged in such occupations are subject to special risks and hazards peculiar to the occupations enumerated and not common to other employments, and that society should, in justice, bear a portion of the burden arising from the accidental injuries peculiar to the risks of those employments, as a part of the cost of such business.

4. SAME—*when injury to employee while crossing a street occurs in the course of his employment.* A carpenter foreman who is struck and injured by an automobile while crossing a street for the purpose of using a telephone, as a part of his duties as foreman, to order materials for the day's work because there was no telephone in the building where he was employed, must be regarded as being injured while in the course of his employment.

5. SAME—*effect where injury in course of employment occurs before or after working hours.* In determining whether an injury occurred in the course of the employment the exact time when the earning of wages commenced and ended is not conclusive of the question, and a reasonable period must be allowed before and after such time where the employee is injured at a place where he might

then reasonably be expected to be and is performing duties of his employment.

6. SAME—*what determines whether injury while crossing street arises out of the employment.* In determining whether an injury to an employee who was struck by an automobile while crossing a street was one arising out of the employment the test is not whether other persons are exposed to the same danger when crossing streets but whether the particular employment rendered the workman peculiarly subject to such danger.

7. SAME—*when an injury to employee while crossing a street arises out of the employment.* Where a carpenter foreman, as a part of his duties, is required to cross a street for the purpose of telephoning orders in furtherance of the business of his employer and while so doing is struck by a passing automobile, the injury is one arising out of the employment.

8. SAME—*weight of evidence must be passed upon by Industrial Board.* The weight of testimony is a matter to be passed upon by the Industrial Board, and where there is evidence to support the finding of the board, even though that evidence is controverted, the courts cannot pass upon its weight or sufficiency.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

RICHARD J. LAVERY, and SHEPARD, McCORMICK, THOMASON, KIRKLAND & PATTERSON, for plaintiff in error.

GEORGE E. FIDLER, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is a writ of error to review the judgment of the circuit court of Cook county affirming the decision of the Industrial Board of this State awarding defendant in error, Joseph Belanger, compensation for accidental injuries sustained by him while in the employ of plaintiff in error, the Mueller Construction Company. The accident occurred on the morning of November 19, 1914, by defendant in error being struck by an automobile while in the act of crossing Chicago avenue to telephone for materials to be used in the remodeling of the building on which he was at work for .

plaintiff in error. The Industrial Board found defendant in error was permanently disabled, and allowed him, in addition to his first hospital and medical aid, compensation at the rate of $12 per week until a sum equal to $3500 should be paid, and a pension of $280 per year after that, payable in monthly installments, as long as he lived.

The main grounds urged for a reversal of the judgment are: First, that the parties were not operating under the Workmen's Compensation act at the time of the injury; second, that the accident did not arise out of and in the course of the employment; and third, that the defendant in error was not wholly and permanently incapacitated from work.

At the time of the accident plaintiff in error was engaged in remodeling the Catholic cathedral at the corner of State and Superior streets, in the city of Chicago. Defendant in error was its foreman in charge of the carpenter work. As such foreman he ordered all materials, hired and discharged the men under him and had full control of the work. In order to properly perform the duties of his position it was customary for him to be at the building in the morning from twenty to thirty minutes before the other workmen, to order materials, look over the building and in a general way make preparation for the day's work. The men under him reported at eight o'clock in the morning and quit at five o'clock in the afternoon. He was paid by the hour, from eight to twelve in the forenoon and from one to five o'clock in the afternoon. He received no extra pay for reporting in advance of the other men. On the afternoon of the day preceding the accident he had directed one of his men to telephone for lumber which he would need the first thing in the morning, and the man had reported to him that the lumber company would be unable to make the delivery before noon of the following day. No telephone had been installed in the building on which defendant in error was at work, and when the occasion arose for the use of

one he was required to go elsewhere. During the three or four months he had been at work on the cathedral, he, or the men under his direction, had used some telephone in the vicinity a dozen or more times. Defendant in error on these occasions advanced the money to pay the phone charges and the same was re-paid to him by plaintiff in error when he turned in his expense account. This had been the practice during all the time he was at work on this job. On the day of the accident he reached the building at about 7:30 o'clock in the morning. At that time two of the other men who worked on the job were there. He opened the doors in the basement, where the tools were kept, and started to telephone to a lumber company for lumber for use in that day's work. He went north on Cass street to Chicago avenue, which is about half a block from the building, and started to cross the latter street, when he was struck by an automobile and severely injured. The telephone he was expecting to use was in a saloon on the north side of Chicago avenue. He did not see the automobile before he was struck by it. As a result of the accident his spine, ribs, shoulder, knee and ankles were injured. He was confined to his bed about two weeks, after which time he was able to be up only for a short period each day for some time. At the time of the hearing three of his lumbar vertebræ were displaced, and he had ecchymosis of the left side, atrophy of the right leg at the thigh and only the partial use of his right arm. There is no dispute but that he is totally and permanently incapacitated from doing the kind of work in which he was engaged when injured, or any kind of manual labor requiring lifting, climbing or heavy physical exertion, although there is some testimony to the effect that he might do certain kinds of office work if it were not for the difficulty of keeping regular hours.

In support of the plaintiff in error's first contention two points are made: First, that the period of employment had not commenced at the time of the accident to defendant in

error and hence the accident did not occur in the course of his employment; and second, that the injury received in crossing a public street was not one arising out of his employment but arose from a hazard common to all people who use the public streets.

In support of the first contention it is urged that as there is no proof the parties had filed their election to come under the act but were brought under its provisions automatically because the enterprise in which they were engaged was one of those mentioned in section 3 of the act, there is no liability until the time for the actual commencement of work. The statute makes the employer liable for all accidental injuries sustained, "arising out of and in the course of the employment." The words "arising out of" and the words "in the course of" are used conjunctively. In order to satisfy the statute both conditions must concur. It is not sufficient that the accident occur in the course of the employment, but the causative danger must also arise out of it. The words "arising out of" refer to the origin or cause of the accident and are descriptive of its character, while the words "in the course of" refer to the time, place and circumstances under which the accident takes place. (*Fitzgerald* v. *Clarke & Sons,* 1 B. W. C. C. 197; *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) By the use of these words it was not the intention of the legislature to make the employer an insurer against all accidental injuries which might happen to an employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work in the scope of the workman's employment or incidental to such employment, and accidents in which it is possible to trace the injury to some risk or hazard to which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable in some special degree to the particular employment are excluded. This intention is mani-

fest by the act in confining its automatic provisions to certain hazardous employments enumerated in section 3 of the act. The employments included are restricted and have special reference to those that are dangerous to lives and limbs of those employed therein. The reason for the classification is, that experience has shown that those engaged in such occupations are subject to special risks and hazards peculiar to those occupations not common to other employments, and that it is but just that society should be made to bear a portion of the burdens arising from the accidental injuries peculiar to the risks of those employments as a part of the cost of such business.

In *Dietzen Co.* v. *Industrial Board, supra,* on the authority of *Moore* v. *Manchester Liners,* (1910) A. C. 498, we held an accident arises in the course of the employment if it takes place while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do such thing, and that an accident arises out of the employment when it results from a risk reasonably incidental to the employment and arising from some cause "which might have been contemplated by a reasonable person when entering the employment as incidental to it." In speaking on this same subject the Supreme Court of Massachusetts in *McNicol's case,* 215 Mass. 497, said that an injury may be said to "arise out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment, but it excludes an injury which cannot fairly be traced to the employment as a con-

tributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." See *Milliken's case,* 216 Mass. 293; *Sanderson's case,* 224 id. 558.

As a part of defendant in error's duties he was required to order materials as needed, and it may fairly be said, as an incident to such employment, that he would have occasion to use, and did use, a telephone. As none was provided he would go to some nearby place to use a telephone as occasion required. In going to and returning from such place we think he was as much in the course of his employment as he would have been in going to and returning from a telephone if one had been installed on the premises. In such case there can be no question but that had he been injured the injury would have occurred in the course of his employment. In the instant case, as was his custom, he had reported at the building in advance of his men, and at the time of the accident was on his way to telephone about a matter which was a part of his employer's business in the usual course of his employment. Under these facts there can be no serious question but that the accident occurred in the course of the employment. That it occurred before the actual time for the commencement of work is not controlling. Too great stress cannot be placed on the exact time when the earning of wages commenced and ended, but a reasonable time must be allowed before and after such time and included within such period of employment where the employee is at a place where he might reasonably be expected to be at such time and is injured in the course of the

duties of his employment. What would be a reasonable time in such case must to a large extent depend upon the particular facts and circumstances of each case. In *Munn* v. *Industrial Board*, 274 Ill. 70, we held an injury sustained by an employee an hour after his usual quitting time, by the inhaling of gas in attempting to put out a fire in the coal in and about the boiler and engine room of his employer's premises, arose out of and occurred in the course of his employment. We there said: "The mere fact that at the time of the accident Casparson's day's service, according to the terms of his employment, had ended, is not sufficient to authorize a reversal of the finding that the accident arose out of and was received in the course of his employment. The Industrial Board found that on his return to the boiler room the second time he put in some coal. An employee should not be penalized for working overtime if he wishes to do so or for endeavoring to save his master's property." What is there said we think is controlling here, and applies as well to an employee coming to work before the time for the commencement of work as it does after the hour for quitting has arrived.

As to the other branch of the case, did the accident arise out of the employment or from any special risk or hazard peculiar to the employment or incidentally connected therewith? This is by far the most difficult question in the case. A risk is said to be "incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service." In *Podger* v. *Parsley School Board*, S. C. 584, it was held that an injury to a janitor on the street by being overcome by the heat in the course of his employment in taking messages from one headmaster to another did not arise out of such employment. In *Symmonds* v. *King*, 8 B. W. C. C. 189, it was held that a painter who was obliged to cross a street to obtain some paint and was knocked down by a tramcar and injured did not suffer an injury arising out of and in the course of his employ-

ment. In *Sheldon* v. *Needham,* 7 B. W. C. C. 471, it was held a charwoman sent by her employer to mail a letter, who fell and broke her leg in going to the post-office, could not recover. The basis of these decisions is that the injury sustained in such case does not arise out of any special risk peculiar to the line of such employment greater than that imposed upon others but from a cause to which all persons who use the public streets, whether employed or not, are in an equal degree exposed. In *Hopkins* v. *Michigan Sugar Co.* 184 Mich. 87, it was held that an employee whose duty it was to visit different factories of his employer, and who, while returning from a visit, slipped and fell on an icy pavement while walking towards a street car, could not recover. On the other hand, it has been held that where there is some extra hazard in the employment or where the injury occurs through some act of the employer the injured employee is entitled to recover under the Compensation act. In *Roland* v. *Wright,* 1 K. B. 963, a stableman, while eating his lunch in the stable, was bitten by a cat belonging to the proprietor and which was kept in the stable. The court held that by reason of the proprietor keeping the cat in the stable the employee was thereby subjected to an extra hazard by the employer, and that the accident was just as much an accident arising out of his employment as if he had been kicked or bitten by a horse in the stable. In *Pierce* v. *Provident Clothing and Supply Co.* 1 K. B. 997, (4 B. W. C. C. 242,) it was held where a man was employed as a collector and with the knowledge and permission of his employer traversed the streets of a crowded district of the city on a bicycle and while so doing collided with a tramcar, he was exposed more than an ordinary member of the public to the risks of the streets and compensation could be recovered for his death. In *McNiece* v. *Singer Sewing Machine Co.* 4 B. W. C. C. 351, a canvasser and collector, while riding a bicycle in the course of his employment, was kicked by a horse and it was held that he was entitled to recover. In

*Zabriskie* v. *Erie Railroad Co.* 96 N. J. L. 266, the employer had failed to provide the necessary toilet facilities at the place where the deceased was working and he and other employees were compelled to cross a street to reach such. While going across the street for that purpose the deceased was struck by an automobile and thrown onto a railroad track which crossed the street and was again struck by a train and killed. It was held that a recovery could be had under the Compensation act.

It is difficult to distinguish and reconcile all the cases, but the gist of the decisions seems to be that there must be some special risk incident to the particular employment which imposes a greater danger upon the employee than upon other persons using the streets. The criterion, however, is not that other persons are exposed to the same danger, but rather that the employment renders the workman peculiarly subject to the danger. The question is, then, did the circumstances of the employment of the defendant in error require him to incur some special risk in using the street in the way he did? If so, no matter how slight, it cannot be said that no greater danger was imposed upon him than upon an ordinary member of the public. Under the decisions, if the plaintiff in error had employed a messenger to run errands for the foreman in charge of the work on the cathedral, to answer telephone calls and send messages by telephone, there could be no question but that he could recover if he were injured in the same manner that the defendant in error was injured. The principle underlying his right to recover would be the same whether he telephoned frequently or seldom. The status of the defendant in error was not materially different as to his duties at the time of the injury from that of a messenger particularly employed as such. He had various duties to perform. If he were injured while in the performance of any of his duties such injury would arise out of his employment. It was peculiarly his duty, among other things, to ascertain the

amount of material on hand and the amount needed and to take the necessary steps to get needed material to the work. He had pursued the practice of going to public telephones to telephone for materials and had sent employees under him on similar errands, and plaintiff in error, as his employer, had acquiesced in this course of conduct and had re-paid him the amounts expended by him for telephone charges in sending these messages. The defendant in error and the employees he had sent had followed substantially the same practice,—that is, of going to convenient telephones in that neighborhood. Plaintiff in error had installed telephones at other buildings where it was doing work similar to the work in this case.

In *Zabriskie* v. *Erie Railroad Co. supra,* it is said: "The danger was one which, in the language of the cases, was peculiar to the employment, in that the absence of proper facilities at the shop and the necessity of crossing the street to reach them gave rise to it. It was not the danger of an ordinary member of the public crossing a street on his own business, but was the subjection of the employee to that danger by the conditions of his employment. The fact that the accident may have been, and probably was, due to the negligence of the driver of the automobile, and perhaps also to the contributory negligence of the deceased, tends to cloud the issue but does not differentiate the situation from that of any workman who is required, in the performance of his work, to go into a dangerous place and incur the dangers connected with that place. There were, therefore, two concurring causes of the accident, namely, the automobile and the necessity of crossing the street, for the latter of which the employer was responsible. In this aspect the case resembles *McNicol's case,* 215 Mass. 497, where deceased was put to work next or near to a fellow-workman who was known to the employer to be addicted to drink and was ugly when in his cups. While deceased was at work, this man, being drunk, attacked and killed him, or injured

him so that he died, and the Supreme Court of Massachusetts held that the injury arose out of and in the course of the employment, putting its decision upon the causal connection between the injury of the deceased and the conditions under which the defendant required him to work. In the language of the Massachusetts court, the act of the automobile driver and the conditions of employment that required the deceased to cross a street were contributing proximate causes, the latter of which was an actual risk of the employment."

While it is undoubtedly true that the danger or liability of injury would have been greater if the nature of the employment of defendant in error had required him to cross the street several times a day, such liability would be one of degree, only. If, as a part of his duties, he was required to cross the public street for the purpose of telephoning on the business of his employer and while so doing was struck by a passing vehicle, we are unable to see why, under the facts of this case, such an accident does not arise out of his employment as well as in the course of his employment. He was injured in performing a regular duty that was expected of him. It can be readily inferred from the evidence that it was part of his duties to supervise the delivery of material to the building, and that in so doing it was necessary to be on the adjacent streets to direct where such material should be deposited or brought on the premises. Had the accident occurred while he was so engaged it would have been substantially the same, in legal effect.

As to whether the defendant in error had suffered a complete disability that rendered him wholly and permanently incapable of work, all that need be said is that the evidence was conflicting. The Industrial Board found from the evidence that he was wholly and permanently disabled. There was evidence to support such finding, being the testimony of physicians who had examined the defendant in error that in their opinion his disability was permanent and

a total one and that he would not improve. Another physician testified on behalf of plaintiff in error that in his opinion the defendant in error was not totally incapacitated,— that he could do some office work. The weight of this testimony was a matter to be passed upon by the Industrial Board. Where there is evidence to support the finding of the board, even though that evidence is controverted, the courts cannot pass upon its weight or sufficiency. *Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498; *Chicago Dry Kiln Co.* v. *Industrial Board,* 276 id. 556.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*