(Nos. 1883-1884—Consolidated—

WILLIAM E. ANDRES, Nos. 1883, WILLIAM E. ANDRES, ADMINISTRATOR OF THE ESTATE OF ALMA ANDRES, Deceased, No. 1884, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 11, 1934.*

HARRY I. HANNAH, for claimant.

OTTO KERNER, Attorney General, for respondent.

Mr. Justice Linscott delivered the opinion of the court:

On motion of the plaintiff, the above entitled cases have been consolidated, as the alleged injury and resulting damages arose out of the same facts.

The declaration in each case is a complaint against the State of Illinois, in a plea of trespass on the case, and alleges that William E. Andres and Alma Andres were on or about the 1st day of March, 1931, employed as attendants in the Illinois State Hospital at Elgin, and while so engaged in the course of their duties, were fed with food furnished and prepared by the said State of Illinois, through its officers, agents and employees, and while so engaged in the course of their duties as such attendants, it became and was the duty of the said State of Illinois to furnish them with pure and wholesome food, properly prepared; yet the defendant, the State, not regarding its said duty to use due care in that behalf, did furnish the said William E. Andres and Alma Andres, while so engaged in the course of their duties, tainted and unwholesome food and which was not properly prepared, that is to say, to-wit, meat that was tainted and infected, and not properly cooked and prepared, and as a result thereof the said Alma Andres became ill and sick and infected with disease, to-wit: Trichinosis, and as a result thereof she be-

came sick, lame and disordered, and so remained until the 4th day of June, 1930 when she died as a result of the disease so incurred as aforesaid. The declaration then alleges her next of kin and claims damages in the sum of $10,000.00. In this declaration there is a second count, but there is no substantial difference in the averment so far as liability is concerned, from the first count, except that William E. Andres did not die. The averments in the case of *William E. Andres* vs. *The State of Illinois,* are substantially the same.

The Attorney General has made a motion to dismiss this case on the grounds that it does not state a cause of action.

The State, at Elgin, Illinois, maintains a charitable institution known as the Illinois Northern Hospital for the Insane, and the State may under the law, receive any grant, gift, donation, devise or bequest of real or personal property for the use of any charitable institution. This institution is also maintained by appropriation by the legislature, though a charge is made for the care of its inmates.

In the case of *Parks* vs. *Northwestern University,* 218 Ill. 381, the declaration alleges that the University undertook, for hire, to teach Parks the science of dentistry, dental surgery, etc., and charged that he received injuries resulting in the loss of an eye through the negligence of one of the professors employed by the University while Parks was in his charge as a student in a class-room or laboratory of the University. A demurrer was sustained to the declaration by the Superior Court of Cook County and the cause dismissed. The ground of the demurrer was that the University is a charitable institution, organized for the purpose of disseminating education and professional learning, and that the doctrine that the employee shall be liable to respond for the negligent act of the employer has no application to it. Without an extended discussion of this case, the Supreme Court held that in the Statute of charitable uses, (43 Eliz. chap. 4,) which is a part of the common law of this State, "schools of learning, free schools," etc., are mentioned as charitable objects, and the fact that the appellee requires its students to pay tuition does not change its character as a charitable institution, and held that a charitable institution was exempt from liability, or damages resulting from the negligent acts of its servants.

To the same effect is the case of *Hogan* vs. *Chicago Lying-In Hospital*, 335 Ill. 42 where it was held that a purely charitable corporation is not liable for the torts or negligence of its employees, servants or agents in the performance of their duties in carrying on the work of the corporation.

Counsel for plaintiff state that they are fully aware that the State is not subject to a suit except by its own consent as provided by law, and that it has also been held by this court that the conduct of a hospital is not an extra hazardous enterprise. He further states that he is aware that as a general rule of law the doctrine of respondeat superior does not apply to the State, and states that he relies upon the Court of Claims Act as to the jurisdiction of the Court of Claims, which provides that the Court of Claims has jurisdiction:

"To hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State as a sovereign commonwealth should, in equity and good conscience discharge and pay."

Counsel also states that the foregoing is in addition to its powers to hear cases arising under the Workmen's Compensation Act.

The declaration attempts to state a cause of action at common law in a plea of trespass on the case, and does not purport to state any facts which would bring these cases under the Compensation Act. These declarations allege that the parties, while engaged in the course of their duties were fed impure and poisonous food, furnished and prepared by the State of Illinois, through its officers and agents. While the declaration alleges that they were engaged as attendants, it does not set forth of what their work consisted.

Under Section 3 of the Compensation Act, the provisions thereof apply automatically and without election to the State, and others engaged in any department of the enterprises or businesses mentioned therein, and there are ten different businesses and enterprises mentioned, but neither of these include an attendant at a State Hospital. While this would not be necessary, it would be necessary to aver facts which would show what the duties of the attendants were at the time of the injury to the end that this court may determine

if such attendants do come under the provisions of Section 3 of the Compensation Act.

Section 6 of the Court of Claims Act, provides that the court shall have power:

"To hear and determine the liability of the State for accidental injuries or death suffered in the course of employment by any employee of the State, such determination to be made in accordance with the rules prescribed in the Act commonly called the 'Workmen's Compensation Act,' the Industrial Commission being hereby relieved of any duty relative thereto."

While it is true that Section 4 of the Compensation Act defines the term "employer" as used in that Act to include the State and every person, firm, public or private corporation, including hospitals, the service or duties of the employee must be one of those that come within the enterprises or businesses enumerated in Section 3 of the Act.

The specific charge in each of these cases is that the respective parties, while engaged in the course of their duties, were fed with food furnished and prepared by the State, by its employees, which was poisonous. We take it from the averments in the declaration, although no specific charge is made, that a part of the compensation that these parties were to receive, were their meals. It would be absurd and ludicrous to hold that these plaintiffs were engaged by the State to eat meals.

It is fundamental under the Compensation Act that a compensable injury must arise "out of" and "in the course of" the employment. The words "in the course of" the employment refer to the time, place and circumstances under which the accident takes place. The words, "arising out of" the employment refer to the origin or cause of the accident as the result of a risk reasonably incidental to the employment, which might have been reasonably contemplated by a person entering the employment as incidental to it.

*Dietzen Co.* vs. *Industrial Board,* 279 Ill. 11; *Mueller Const. Co.* vs. *Industrial Board,* 283 Ill. 148.

In the latter case, the Supreme Court of Illinois cites as a concrete statement of the law the language of the Supreme Court of Massachusetts in McNicol's case, 215 Mass. 497, that an injury may be said to "arise out of the employ-

ment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment, but it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a national consequence.''

In the case of *Vincennes Bridge Co.* vs. *Industrial Commission*, 351 Ill. 444, on page 450 of the opinion the court held that there must be a proximately causative relation between the nature of his work and the injury, so that it may be sure that the injury had its origin in a risk connected with the employment, from which the injury, though unforeseen, may after the event be recognized to have flowed as a rational consequence. The court here cited numerous authorities.

As said above, these plaintiffs were not employed to eat food, but apparently the furnishing of food by the State was a part of their compensation, and the eating thereof was not a part of their duties.

Counsel for plaintiff calls attention to Section 4 of the Court of Claims Act which provides that the court shall have jurisdiction:

"To hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State, as a sovereign commonwealth, should, in equity and good conscience, discharge and pay."

From the above we have seen that there is no legal liability arising out of the facts in this case that would bind a

private employer, and there is nothing stated in the Act of the Court of Claims which would bind the State where a private individual, under like circumstances, would not be bound. The law does not give an employee of this State any greater rights than an employee of a private individual has under like circumstances.

In the case of *Crabtree* vs. *State of Illinois,* 7 Court of Claims Reports, page 207, we held that:

"The jurisdiction of the Court of Claims in actions for compensation by State employees for accidental injuries is derived from Paragraph 6 of Section 6 of Act creating court, and is the same in such actions as Industrial Commission has in other cases and the court in consideration of such cases must be guided by provisions of Workmen's Compensation Act."

In the same case, in commenting upon equity and good conscience doctrine, we said:

"The provisions of Paragraph 4 of Section 6 of Court of Claims Act with reference to equity and good conscience merely defines the jurisdiction of the court and does not create a new liability against the State nor increase or enlarge any existing liability and limits jurisdiction of court to claims under which State would be liable in law or equity, if it were suable, and where claimant fails to bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure one."

The motion of the Attorney General to dismiss this case will therefore be sustained, and counsel for plaintiff may have thirty days after the filing of this decision within which to amend his complaint pursuant to Rule 31 of this court, and if he decline or fail to so amend, final judgment will be entered dismissing the claim.