MANUEL LEE LOPEZ *et al.*, Plaintiffs-Appellees, *v.* GIBSON GALEENER *et al.*, Defendants-Appellants.

(No. 74-382;

Fifth District—December 22, 1975.

Burton C. Bernard, of Bernard & Davidson, of Granite City (G. Gordon Burroughs, of Burroughs, Simpson and Wilson, of counsel), for appellants.

C. E. Heiligenstein, of Belleville, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The defendants, Gibson Galeener and Lawrence Hess, appeal from a judgment of the circuit court of Madison County which was entered upon a jury verdict that was rendered in favor of the plaintiffs, Richard Schuette and the administrator of Douglas Lopez's estate. The defendants request a judgment notwithstanding the verdict, or in the alternative, a new trial.

The critical issue in this appeal is whether Richard Schuette and Douglas Lopez were engaged in the line of their duty as employees of Gibson Galeener when they were injured in an automobile accident, so that they were precluded from recovering from the defendants on the theory of common law tort liability by section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.5(a)), which states in pertinent part:

"No common law or statutory right to recover damages from the employer * * * for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, * * * the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury."

The facts were as follows. Gibson Galeener operated a feed store in St. Jacob, Illinois, and a poultry farm which was about one and one-half miles north of St. Jacob. Galeener employed one or two young men steadily to help him in the operation of his feed store and poultry farm. Lawrence Hess was one of Galeener's steady employees. Galeener also employed several young men on a part-time basis.

In April of 1970, Galeener gave part-time jobs to Douglas Lopez and Richard Schuette. Lopez and Schuette were hired to shovel the droppings from beneath the chicken cages on Galeener's poultry farm. At his feed store in town, Galeener provided a shower room where the young men who did this kind of work could change their clothes. On the afternoon of April 14, 1970, Lopez and Schuette went to Galeener's feed store after school. They arrived at the feed store about 2:45. Two other young men who worked for Galeener, Jeff Straube and Lawrence Hess, were also present in the feed store. Lopez and Schuette changed their clothes, and

Straube and Hess loaded Galeener's station wagon with sacks of feed. Hess, Lopez, and Schuette left together in the station wagon and headed for Galeener's poultry farm north of town.

On the way to the poultry farm, the young men stopped at Bloomer's Cafe in St. Jacob. They remained in the cafe about 20 minutes, drinking soda and talking with their friends. After they left the cafe, Hess drove the station wagon on the road that led north out of town. Schuette road in the middle of the front seat, and Lopez sat on the right in the front seat of the automobile. The road on which Hess drove the station wagon crossed a railroad track and U.S. 40 on the north side of St. Jacob. As the station wagon approached the railroad track, the crossing gate began to go down. Hess swerved the station wagon to miss the crossing gate, and then approached the intersection of the road with U.S. 40. At the intersection Hess had a stop sign. Whether he stopped at the stop sign is not clear. He drove the station wagon into the intersection, where it was hit by an automobile traveling west on U.S. 40. The west-bound automobile was being driven by Michael Mickle. Lopez was killed in the collision and Schuette was injured. These facts were not disputed.

There was contradictory evidence concerning the nature of the employment of Lopez and Schuette. Schuette indicated in his testimony that he and Lopez were not required to report at the feed store in town before beginning their work on the poultry farm north of town. Schuette and Lopez had worked for Galeener for only four days before the accident. Schuette testified that on one or two of those days he went straight to the poultry farm from school without stopping at the feed store. Schuette testified that he had no duties to perform at the feed store and that his only job was to shovel the droppings from beneath the chicken cages on the poultry farm. Schuette said that when he and Lopez did go by the feed store, their pay did not begin until they reached the poultry farm. Moreover, Schuette testified that Hess had told him that Galeener did not mind if the young men stopped at the cafe on the way to the poultry farm because they were on their own time when they stopped.

The testimony of Jeff Straube corroborated Schuette's testimony in several respects. Straube said that Lopez and Schuette had reported directly to the poultry farm rather than to the feed store on one or two occasions. Straube said that the young men had talked to Galeener and that Galeener had said that it was permissible for them to stop at the cafe on their way to the poultry farm.

The testimony of Gibson Galeener and his wife, Ruby Galeener, disagreed with the testimony of Straube and Schuette. The Galeeners said that the young men were always supposed to report to the feed store

before beginning their work on the poultry farm. They said that this was necessary in order for Ruby Galeener to keep track of the hours that the young men worked. The Galeeners said that the young men were paid from the time they reported to the feed store until the time that they returned to the feed store from the poultry farm. The Galeeners testified that they did not know about the visit that the young men paid to the cafe in St. Jacob. The Galeeners said that they had not authorized the young men to stop at the cafe.

Schuette and the administrator of Douglas Lopez's estate sued Hess and Mickle on the theory that Hess and Mickle had negligently caused the collision of the automobiles. Because Hess was Gibson Galeener's employee, Schuette and the administrator of Douglas Lopez's estate sued Gibson Galeener on the theory of *respondeat superior.* The defense raised by Galeener and Hess was that Schuette and Lopez were injured in the line of their duty as employees of Galeener, and that they were therefore prevented by section 5(a) of the Workmen's Compensation Act from recovering from the defendants on a theory of common law tort liability.

The case was tried before a jury in the circuit court of Madison County. A special interrogatory was submitted to the jury which required the jury to state whether Schuette and Lopez were in the line of their duty as employees of Gibson Galeener at the time of the accident. The jury answered the special interrogatory "No" and awarded damages against Galeener and Hess to both Schuette and the administrator of Douglas Lopez's estate. The jury also found that Mickle had not been negligent. A judgment was entered in accordance with the jury's verdict.

Galeener and Hess appeal from the circuit court's denial of their post-trial motion and ask for a judgment notwithstanding the verdict on the ground that the evidence proved, as a matter of law, that they had a valid defense based upon section 5(a) of the Workmen's Compensation Act. Galeener and Hess also request a new trial on the grounds that the counsel for Schuette and the administrator of Douglas Lopez's estate made prejudicial remarks in the course of his closing argument and improperly told the jury how to answer the special interrogatory, and thereby deprived the defendants of a fair trial.

■■ A circuit court should grant a motion for a judgment notwithstanding the verdict only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent of the motion, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504.) Moreover, when a defendant asserts that

a plaintiff's action is barred by section 5(a) of the Workmen's Compensation Act, the defendant has the burden of persuading the trier of fact that the plaintiff was engaged in the line of his duty as an employee at the time he was injured. *Meador v. City of Salem*, 51 Ill.2d 572, 284 N.E.2d 266.

The evidence in this case must therefore be viewed in the light most favorable to Schuette and Lopez. Viewing the evidence most favorably to Schuette and Lopez requires that the testimony of Straube and Schuette be believed instead of the testimony of Gibson Galeener and Ruby Galeener. The testimony of Straube and Schuette indicated that when Schuette and Lopez were working for Galeener they were not required to report at the feed store in town before going to the poultry farm, and that they could go directly to the poultry farm from school if they chose to do so. The testimony of Straube and Schuette further indicated that Schuette and Lopez were paid only for the time that they worked on the poultry farm, and that they were not paid for the time spent traveling from the feed store in town to the poultry farm. The testimony of Straube and Schuette also indicated that Gibson Galeener knew of the stops that the young men made at the cafe in town and that he had given them his permission to stop on the basis that their pay would not begin until they reached the poultry farm and commenced working there. The question is whether this view of the evidence so overwhelmingly proves that Schuette and Lopez were engaged in the line of their duty to Galeener at the time of the accident that the verdict of the jury that Schuette and Lopez were not engaged in the line of their duty could never stand.

■■■ A general rule has been developed in workmen's compensation cases that accidents that occur while an employee is going to or from his place of employment do not arise out of and in the course of his employment and are therefore not compensable. The reason is that the employee's trip to and from work is the product of his own decision as to where he wants to live, a matter in which his employer ordinarily has no interest. (*Browne v. Industrial Com.*, 38 Ill.2d 193, 230 N.E.2d 181; *Sjostrom v. Sproule*, 33 Ill.2d 40, 210 N.E.2d 209.) An exception to this rule has been recognized by the Illinois Supreme Court, which is that an employee will be considered to have been engaged in the line of his duty even while going to or coming from work if the course or method of his travel was determined by the demands or exigencies of his job rather than by his own personal preferences as to where he desired to live. (See *Sjostrom v. Sproule*.) The defendants, Galeener and Hess, have argued that the travel of Schuette and Lopez from the feed store to the poultry farm was occasioned by the demands or exigencies of their employment with Galeener. The evidence, when viewed most favorably to plaintiffs

shows they were not required by their employment to go to the feed store, and that they were not required by their employment to travel from the feed store to the poultry farm. The most that can be said about the relationship of Schuette and Lopez to the feed store is that Schuette and Lopez could go to the feed store to change their clothes if they desired to do so. This certainly does not overwhelmingly prove that the presence of Schuette and Lopez at the feed store or that the traveling by Schuette and Lopez from the feed store to the poultry farm was brought about by the demands or exigencies of the employment. The verdict of the jury that Schuette and Lopez were not engaged in the line of their duty at the time of the accident was therefore supported by the evidence. The defendants, Galeener and Hess, are not entitled to a judgment notwithstanding the verdict.

Galeener and Hess also ask for a new trial because of certain remarks that were made by the counsel for Schuette and the administrator of Douglas Lopez's estate in his closing argument. The defendants object to a statement that was made by the plaintiffs' counsel that the inapplicability of the section 5(a) defense under the Workmen's Compensation Act was shown by the fact that the medical and funeral bills of the family of Douglas Lopez had not been paid by workmen's compensation insurance. The defendants also object to a statement by the plaintiffs' counsel in his closing argument that the defendants' section 5(a) defense under the Workmen's Compensation Act was "a bunch of bunk," and to the suggestion that the plaintiffs' counsel made in his closing argument that the jury answer the special interrogatory "No" in order to award damages to Schuette and the administrator of Douglas Lopez's estate. The defendants objected to the comment about the medical and funeral bills during the course of the closing argument of the plaintiffs' counsel. Their objection was sustained and the jury was told to disregard the remark. The defendants did not object during the course of the closing argument to the other comments that they now assert were objectionable. In their post-trial motion, the defendants asked for a new trial on the ground that the remark of the plaintiffs' counsel about the medical and funeral bills not being paid by workmen's compensation insurance was prejudicial. The post-trial motion did not include any reference to the "bunch of bunk" remark or to the suggestion concerning the appropriate finding on the special interrogatory. These latter contentions were, therefore, waived by the defendants, Galeener and Hess, and cannot be considered as a basis for granting a new trial. *Lindsey v. Dean Evans Co.*, 11 Ill.App.3d 432, 297 N.E.2d 8.

The circuit court rejected the defendants' argument that the comment about medical and funeral bills by the plaintiffs' counsel had preju-

diced the defendants, and, consequently, denied the defendants' motion for a new trial. The decision on the question whether conduct by counsel for one party has prejudiced opposing parties rests within the sound discretion of the circuit court and will not be disturbed unless the circuit court has clearly abused its discretion in making its decision. This is because the circuit court is in the unique position of hearing all the testimony, all the arguments, and of observing the parties, their counsel, and the effect of all this on the jury. *Martin v. Kralis Poultry Co.*, 12 Ill.App.3d 453, 297 N.E.2d 610.

■■ Because the defendant's objection to the comment about the medical and funeral bills was immediately sustained by the court during the closing argument of the plaintiffs' counsel, and because the jury was told to disregard the comment, the court did not abuse its discretion by deciding on the post-trial motion that the remark had not prejudiced the defendants. A new trial should therefore not be granted on the basis of this remark by the plaintiffs' counsel.

For the foregoing reasons the judgment of the circuit court of Madison County is affirmed.

Judgment affirmed.

EBERSPACHER and KARNS, JJ., concur.