(No. 48888.—)

LINDA HINDLE, Appellant, v. LEO DILLBECK *et al.*, Appellees.—JUSTIN PAKENHAM, Adm'r, Appellant, v. LEO DILLBECK *et al.*, Appellees.

*Opinion filed Oct. 5, 1977.—Rehearing denied Nov. 23, 1977.*

310

MORAN, J., took no part.
DOOLEY and GOLDENHERSH, JJ., dissenting.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora (Charles F. Thompson, Jr., and John M. Lamont, of counsel), for appellants.

Robert F. Casey, of Geneva, and Gerald M. Sheridan, Jr., of Wheaton, for appellee De Kalb Agricultural Association, Inc.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

Mary Dillbeck was hired in June of 1966, by De Kalb Agricultural Association, Inc. (hereafter De Kalb), to act as a crew leader in its corn-detasseling operations. Required to provide transportation for the crew (for which she would receive additional compensation), she arranged to use her father's 1958 three-quarter-ton pickup truck. Two lawn chairs and an old truck seat were installed in the back of the truck to provide seating. On her first day as a crew leader, July 18, 1966, she met the members of her crew at a park in Earlville, Illinois, at approximately 8 a.m. and drove them in her father's truck to the work site. They arrived at 8:30 and detasseled corn until 4 p.m., the end of the workday. The crew members seated themselves in the back of the truck and Mary Dillbeck drove the truck in an easterly direction along Preserve Road toward Route 23. The weather was clear and warm, and the gravel road was dry. As she approached Route 23 Mary Dillbeck attempted to slow down in anticipation of the stop she would have to make at the junction of Route 23 and Preserve Road. She lost control of the vehicle when it started to slide on the gravel, and the truck slid off the road and struck a utility pole. Linda Hindle, a crew member, was seriously injured, and Joyce Lynn Pakenham, another crew member, was killed.

Linda Hindle and Justin Pakenham, as administrator

for the estate of Joyce Lynn Pakenham, filed separate suits in the circuit court of Kane County naming Mary Dillbeck, Leo Dillbeck, her father, and De Kalb as defendants and charging their negligence. The defendants filed motions for summary judgments contending that Linda Hindle's injuries and Joyce Lynn Pakenham's death arose in the line of their employment, and thus any common law actions were barred by section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.5(a)). That section provided, in part:

> "No common law or statutory right to recover damages from the employer or his employees for injury or death sustained by any employee while engaged in the line of his duty as such employee *** shall be available to any employee who is covered by the provisions of this Act ***."

The trial court granted the motions but the appellate court reversed (1 Ill. App. 3d 1021), holding that the motions should have been denied. On remand the suits were consolidated for trial.

Officer James L. Rackley, an Illinois State police officer, testified that he arrived at the scene shortly after the accident. He said that it occurred on Preserve Road about 400 feet west of Route 23 and that the truck left "tire marks or skid marks" 242 feet long on Preserve before it left the road and struck the pole. He stated that the truck continued moving after it struck the pole and came to rest at a point 37 feet south of Preserve and 90 feet east of where it had left the road. He said that he spoke with Mary Dillbeck shortly after the accident and that she told him that "it was caused because she lost control of the vehicle."

The plaintiffs called Mary Dillbeck to testify as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60). She testified that she was moving at about 40 miles per hour and that when

she applied the brakes the back end of the truck began to swerve. She said that she then turned the wheels of the truck in the direction the truck was swerving, but because the swerving became worse, she turned the wheels in the opposite direction to bring the vehicle under control. She testified that, however, at some point after the truck began to swerve, she lost control and the vehicle headed off the road. She said that she was required by De Kalb to provide transportation for her crew members from Earlville to the fields where the work was done and back again, for which transportation she was paid $5 per day. She testified that she had authority to hire and fire members of her crew and that she was required by De Kalb to supervise them while they worked in the fields. She also said that she had the right to select the route to be used for getting from Earlville to the fields and back again and that on the day of the accident she was returning to Earlville over the same route she had driven that morning to get to the field where the crew was to work.

The plaintiffs also called Ernest Kastler, a foreman for De Kalb who supervised its detasseling operations in the Earlville area in July of 1966, to testify as an adverse witness under section 60. He said that a crew leader was paid $5 per day for the use of the vehicle she provided to transport her crew to and from work. He stated that there was no public transportation in the Earlville area. He said, too, that a crew might work in more than one field in a single day, that this was not determined in advance, and that a crew might not work a full 8 hours in case of bad weather. He testified, too, that he had authority from De Kalb to pay the crew members for the time they spent traveling from Earlville to the fields or for the time they spent returning from the fields to Earlville and that he had, as the foreman of that crew, decided Mary Dillbeck's crew would be paid for the time it spent traveling from Earlville to the fields. He said that on July 18 the crew members

were paid from the time they left Earlville at 8 a.m. until they finished in the fields at 4 p.m. He stated that crew leaders were paid $1.60 per hour and crew members, who ranged in age from 14 to 16, $1.15 per hour. He said that he selected Mary Dillbeck to be a crew leader and that she was free to select the routes to travel to and from the fields. Kastler testified that Mary Dillbeck was not required to drive her crew directly back to their home community immediately after work. He stated that she and her crew were free to go wherever they wished after work if Mary Dillbeck was willing to drive the members because "she was still in charge of them until they got back to the park in Earlville."

Linda Hindle testified that by prearrangement she met Mary Dillbeck on July 18, 1966, at 8 a.m. at a park in Earlville and that at that time she did not know which field they were going to work in that day. She said that Kastler did not give her any instructions concerning her work or Mary Dillbeck's responsibilities. She stated on cross-examination that she knew that De Kalb would provide transportation for her to and from the fields. She testified that she had no idea how fast the truck was traveling just before the accident or whether it had slid on the gravel.

At the close of all evidence, the trial court granted Leo Dillbeck's motion for a directed verdict. Before the case went to the jury, the plaintiffs filed an amended complaint. In count I they alleged that De Kalb, through its agent Mary Dillbeck, had negligently operated the truck; Mary Dillbeck was not named as a defendant in count I. In count II they alleged that De Kalb had been negligent in selecting Mary Dillbeck to provide transportation for the plaintiffs. In count III they alleged that Mary Dillbeck was an independent contractor and that she had negligently operated the truck. Count II was dismissed by the trial court for failing to state a cause of action.

Together with instructions and general verdict forms, these two special interrogatories were submitted to the jury:

"You are instructed to answer 'yes' or 'no' to the following Interrogatory: Was the defendant, Mary K. Dillbeck, an independent contractor at the time and place of the occurrence in question?"

"You are instructed to answer 'yes' or 'no' to the following Interrogatory: Were the plaintiffs, Linda Hindle and Joyce Lynn Pakenham, engaged in the line of their duties as employees of the defendant, De Kalb Agricultural Association, at the time and place of the occurrence in question?"

The jury returned a verdict in Linda Hindle's favor and against De Kalb in the amount of $100,000 and in Justin Pakenham's favor and against De Kalb in the amount of $30,000. The jury found in favor of Mary Dillbeck. Both special interrogatories were answered in the negative. Following the trial, the case was again appealed to the appellate court, and, in a Rule 23 order (58 Ill. 2d R. 23), the court reversed the judgment against De Kalb, stating:

"Since De Kalb's only liability here must be on the basis of *respondeat superior* for the actions of its driver, Mary Dillbeck, and since the jury has found for her and against the plaintiffs and judgments thereon have been entered, from which no appeals have been taken, the judgments against the employer cannot stand."

We granted the plaintiffs' petition for leave to appeal under our Rule 315 (58 Ill. 2d R. 315).

De Kalb concedes here that the appellate court's reversal in its favor was error. The jury did not have to find that Mary Dillbeck was free from negligence in order to return a verdict in her favor. Since Mary Dillbeck was not sued in count I of the plaintiffs' amended complaint, the jury could return a verdict in her favor if it found that she was not an independent contractor. The jury's answer to

the first interrogatory shows the jury found she was not an independent contractor. This finding, however, would not preclude the jury from determining that De Kalb was liable. De Kalb could be held liable if the jury found that Mary Dillbeck was De Kalb's agent at the time of the accident and that she was negligent. The jury's verdicts and its answer to the interrogatory show that this is what it found.

De Kalb does present questions here that were not considered by the appellate court. Ordinarily we would remand the cause to the appellate court with the direction that it examine these issues, but considering the age of this litigation and the wishes of the parties we have concluded we should consider the questions.

De Kalb contends that the trial court erred by failing to direct a verdict in its favor and by refusing to grant its motion for a judgment notwithstanding the verdict. Recently, in *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309, we spoke of the standards for these actions:

> "In *Pedrick* this court announced the standard to be used in determining when a trial court should enter either a directed verdict or a judgment notwithstanding the verdict. It was said: 'In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' (37 Ill. 2d 494, 510; see also *Mundt v. Ragnar Benson, Inc.,* 61 Ill. 2d 151, 156-57.)"

De Kalb argues that the evidence establishes that Linda Hindle and Joyce Lynn Pakenham were in the line of duty within the meaning of section 5(a) of the Workmen's Compensation Act, which we have set out earlier, at the time of the accident. The defense that the plaintiffs'

actions were barred by section 5(a) was an affirmative defense that De Kalb was required to plead, as it did, and to prove. *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 578; *Victor v. Dehmlow* (1950), 405 Ill. 249, 252-53.

The plaintiffs' actions were barred if Linda Hindle and Joyce Lynn Pakenham were "engaged in the line of" their duties at the time of the accident. The "line of duty" criterion is identical to the general test of compensability, "arise out of and in the course of employment." (*Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43.) Generally in our State and in other jurisdictions accidents occurring while an employee is traveling to or from his place of work are considered not to arise out of and in the course of employment. (*Warren v. Industrial Com.* (1975), 61 Ill. 2d 373; *Burmeister v. Industrial Com.* (1972), 52 Ill. 2d 84; see also 1 A. Larson, Workmen's Compensation sec. 15.00 (1972).) "The reason is that the employee's trip to and from work is the product of his own decision as to where he wants to live, a matter in which his employer ordinarily has no interest." *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43.

Exceptions to this, however, have been recognized. (See, *e.g., Thomas Reed & Son v. Industrial Com.* (1967), 36 Ill. 2d 612; *Urban v. Industrial Com.* (1966), 34 Ill. 2d 159 (trip or travel is necessitated by the demands of the employment).) In *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, the court held that the plaintiff's cause of action against his co-employee was barred by section 5(a) under circumstances not as compelling as those here. There the plaintiff and the defendant worked for Armour & Company, whose main office was in Chicago. The plaintiff and later the defendant were assigned to supervise construction work at the plant Armour was building in Bradley, Illinois. The plaintiff traveled to Bradley in a company car and was reimbursed for gas and oil. At first the defendant drove his own car to Bradley and received a mileage allowance. The

defendant was then directed by Armour's superintendent at Bradley to ride with the plaintiff in the company car to eliminate the defendant's duplicate expense. Thereafter the defendant would drive his car to the plaintiff's house and then ride with the plaintiff to the job site in Bradley. The company car broke down, and the defendant and the plaintiff began driving to Bradley in the defendant's car. The defendant again was given a mileage allowance. The defendant informed his supervisor of the car's breakdown and was told that efforts would be made to secure another company car. The plaintiff was injured in a collision while riding to Bradley in the defendant's car. He brought suit against the defendant. This court held that the injuries arose out of and in the course of the plaintiff's employment, thus barring a common law action against the defendant.

We consider that De Kalb provided transportation for its crew members, as a business necessity, and, consequently, that Linda Hindle and Joyce Lynn Pakenham were in the course of their employment at the time of the accident. That De Kalb authorized its foreman to pay the crew for time spent either going to or coming from the field was not relevant to the question of whether the transportation was in the course of employment. We also judge "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The record shows that no public transportation was available in the Earlville area in the summer of 1966. It also shows that a crew might work in more than one field in a day, and it also shows that a crew might not work for a full day. Whether it would work in more than one field in a given day or whether it might not have a full day's work could not be determined in advance. It was shown that crew members depended on De

Kalb to provide transportation to and from the fields and that they were required to ride to work with their crew leaders in the morning. The conclusion is inescapable that the crew members depended on De Kalb to provide transportation to and from work. If it did not do so, the crew members, who ranged in age from 14 to 16, could not have gotten to work or gotten home at the end of the working day.

Larson in his treatise on workmen's compensation states:

> "If the trip to and from work is made in a truck, bus, car, or other vehicle under the control of the employer, an injury during that trip is incurred in the course of employment. The justification for this holding is that the employer has himself expanded the range of the employment and the attendant risks." (1 A. Larson, Workmen's Compensation sec. 17.10 (1972); see also sec. 16.30 (1972).)

The crew members' range of employment was expanded by De Kalb's providing of transportation, and it is also clear that the truck was under the control of De Kalb.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.

MR. JUSTICE DOOLEY, dissenting:

Whether the Workmen's Compensation Act barred plaintiff's action was determined by the jury adversely to defendant's contention. It answered in the negative this special interrogatory:

> "Were the plaintiffs, Linda Hindle and Joyce Lynn Pakenham, engaged in the line of their duties as employees of the defendant, De Kalb Agricultural Association, at the time and place of the occurrence in question?"

It is fundamental that the burden of proving this affirmative defense was upon the defendant. (*Victor v. Dehmlow* (1950), 405 Ill. 249, 252-54.) Specifically, the defendant invoking such a defense "would be required to plead, and have the burden of proving, that the plaintiff was injured or killed by an accident arising out of and in the course of his employment." 405 Ill. 249, 253-54.

These principles are relevant in determining whether the evidence on this issue presented a factual or legal issue, or a mixed question of law and fact. These girls had completed their work when they clocked out on their timecards at 4 p.m. Their pay period terminated at that hour. They were not required to ride home with Mary Dillbeck. After 4 p.m. they had no duty, direction or instruction. Insofar as the employer was concerned, the girls could do as they desired after they left the fields. If they wished to leave the truck at any given point between the fields and Earlville, they were free to do so.

We appreciate the difference between this trip and the trip to work. In the morning it was required that they assemble at a certain point in Earlville, and they were paid their hourly wage between the point where they were picked up and the work site proper.

Substantially the same issue has been decided differently by this court. In *Meador v. City of Salem* (1972), 51 Ill. 2d 572, plaintiff was employed by the Salem Police Department. His hours were 4 p.m. to midnight, and frequently, as a courtesy, he was given a ride home in one of the police cars of the defendant city. On the night in question, while he was being given a ride home, the police officer driving the city vehicle, in an effort to overtake a speeding automobile, ran off the road causing injury to the plaintiff. There, as here, defendant asserted the affirmative defense of the Workmen's Compensation Act. There, as here, there was a special interrogatory answered adversely to defendant. But there, unlike here, the court determined

that the issue was one of fact for the jury.

In *Lopez v. Galeener* (1975), 34 Ill. App. 3d 815, another similar situation was encountered. The defendant operated a feed store in town, as well as a poultry farm. Richard Schuette and Douglas Lopez were hired to work on the poultry farm. However, at the feed store in town defendant provided a shower room where those who did this work could change clothes. On the afternoon of the particular day, Schuette and Lopez went to the feed store after school. They changed their clothes, and defendant Galeener left with them and two other boys, including defendant Hess, for his poultry farm. En route they stopped at a cafe for about 20 minutes. When completing their journey to the farm, the station wagon, then operated by defendant Hess, was struck by an automobile, resulting in injury to Schuette and death to Lopez. In the action by Schuette and the administrator of Lopez' estate, it was disputed whether Schuette and Lopez were required to report at the feed store in town before beginning their work at the poultry farm.

In affirming a judgment for the plaintiffs, the appellate court noted:

> "The defendants, Galeener and Hess, have argued that the travel of Schuette and Lopez from the feed store to the poultry farm was occasioned by the demands or exigencies of their employment with Galeener. The evidence, when viewed most favorably to plaintiffs shows they were not required by their employment to go to the feed store, and that they were not required by their employment to travel from the feed store to the poultry farm. The most that can be said about the relationship of Schuette and Lopez to the feed store is that Schuette and Lopez could go to the feed store to change their clothes if they desired to do so. This certainly does not overwhelmingly

prove that the presence of Schuette and Lopez at the feed store or that the traveling by Schuette and Lopez from the feed store to the poultry farm was brought about by the demands or exigencies of the employment." *Lopez v. Galeener* (1975), 34 Ill. App. 3d 815, 819-20.

Could not the jury here reasonably conclude that this trip after the day's work was a courtesy of the employer, or that the trip was not requisite to the demands or exigencies of the employment, or that the girls' work consisted of being in town in the morning and going to the fields until the end of the working day when they were no longer subject to the employer? If they found any of the foregoing facts unfavorably to the defendants, such would justify the negative answer to the special interrogatory.

We must remember it was for the jury to draw these inferences, give meaning to the circumstances, and attach whatever significance to the particular facts as was justifiable.

Such evidence was a basis for the conclusion reached here by reasonable and fair-minded men in the exercise of their impartial judgment.

That we might reach a different result is immaterial. This is the very purpose of juries. As G. K. Chesterton once observed: "I would trust twelve ordinary men, but I cannot trust one ordinary man." Joiner, Civil Justice 136 (1962).

While the statute employs the words "in the line of his duty" (Ill. Rev. Stat. 1967, ch. 48, par. 138.5), this court has determined that this means that the injury must not only be "in the course of employment" but that it must "arise out of" the employment. (*Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43.) This is an aspect which in and of itself would raise an issue of fact in this situation.

At the time of this accident, these girls were riding in a vehicle on a public highway. They were not subjected by

their employment to a hazard to which the public was not exposed. Nor did their employment peculiarly expose them to a greater threat of injury than that to any traveler in any vehicle along the highway.

In *General Steel Castings Corp. v. Industrial Com.* (1944), 388 Ill. 66, involving an employee whose work was ended and who had left his employer's premises, this court noted:

"Whether an accident is so related or incident to the employment as to cause it to be seen that it arose out of or in the course of the employment, depends upon the particular circumstances of each case. No formula can be laid down which will automatically solve every case. The test is whether the employee, when injured, was at the place where, by reason of his employment, he was required to be, or where he is subjected by reason of his employment to a hazard to which the public is not exposed, or to which he by reason of his employment is exposed peculiarly and to a greater degree than the public. If his work for the day is ended and he is off his employer's premises where the hazard to which he is exposed is the same and of the same degree as that to which the public is exposed, his injury is not compensable. It is not sufficient to say he would not have been at that place if it had not been for his job, since the same can usually be said of the general public." 388 Ill. 66, 70.

This same principle has been articulated in a series of cases. In *Great American Indemnity Co. v. Industrial Com.* (1937), 367 Ill. 241, an employee, working for his employer, was walking along a public street when a foreign substance was deposited in his eye, causing him to lose the sight thereof. In holding that the injury did not arise out of employment, the court quoted from *Mueller Construc-*

*tion Co. v. Industrial Board* (1918), 283 Ill. 148. That case, after citing similar cases, said:

"[T]he gist of the decisions seems to be that there must be some special risk incident to the particular employment which imposes a greater danger upon the employee than upon other persons using the streets. The criterion, however, is not that other persons are exposed to the same danger, but rather that the employment renders the workman peculiarly subject to the danger." (283 Ill. 148, 157.)

See also *Farley v. Industrial Com.* (1941), 378 Ill. 234, 237; *Borgeson v. Industrial Com.* (1938), 368 Ill. 188, 193.

When it is considered that the workday for these girls, as well as their period of compensation, terminated at the fields, that there was no requirement for them to ride from the fields to Earlville with Mary Dillbeck, that they could leave the truck at any time, and that the injury arose out of a danger to which the public in general was exposed, it would appear that it is an issue of fact whether the girls were in the line of their duties at the time of the accident.

The trial court was of the opinion that the affirmative defense presented a factual issue; three judges of the appellate court, on appeal from an order granting summary judgment in which this subject was in issue (1 Ill. App. 3d 1021), believed that there was such a factual issue as would withstand a summary judgment, and two judges of this court share that belief. (The appellate court on the second appeal, in a Rule 23 order (58 Ill. 2d R. 23), never touched on this question, since it took the position that a judgment in favor of Mary Dillbeck precluded the action against De Kalb Agricultural Association, Inc.)

We note this as indicative of considerable division of judgment on whether here "all of the evidence, when viewed in its aspect most favorable to the opponent, so

overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) In my opinion the majority has unfortunately treated the evidence in the light most favorable to the party making the motion for judgment, notwithstanding the verdict of the jury.

The majority's holding that Linda Hindle and Joyce Parkenham were in the line of their employment at the time of this occurrence does not mean that compensation for this injury and death will be received under the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.1 *et seq.*). The employer might be successful in the defense of these claims for the reasons discussed in these opinions. This, of course, would magnify the error of the majority.

MR. JUSTICE GOLDENHERSH joins in this dissent.